OPINION *Page 2 
{¶ 1} On March 31, 2004, the Muskingum County Grand Jury indicted appellant, Stephan Marshall, on one count of involuntary manslaughter in violation of R.C. 2903.04 and one count of assault in violation of R.C.2903.13. Said charges arose from an incident wherein appellant allegedly struck his pregnant girlfriend, Cookie Nicholson, causing her to suffer a miscarriage on January 2, 2004. The involuntary manslaughter count was predicated on the unlawful termination of the pregnancy of another by means of committing the offense of assault.
 {¶ 2} A jury trial commenced on September 27, 2005. The jury found appellant guilty as charged. By entry filed November 18, 2005, the trial court sentenced appellant to an aggregate term of four years in prison.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY PERMITTING THE TESTIMONY OF DR. GOODARZI TO STAND OVER APPELLANT'S OBJECTION, AS THE PROSECUTION VIOLATED CRIMINAL RULE 16 WHEN IT FAILED TO PROVIDE THE DEFENSE WITH A REPORT OF THE SUBJECT MATTER OF DR. GOODARZI'S FINDINGS AND CONCLUSIONS PRIOR TO TRIAL, THEREBY DEPRIVING APPELLANT OF DUE PROCESS OF LAW UNDER THE UNITED STATES AND OHIO CONSTITUTIONS." *Page 3 
 II {¶ 5} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT PROHIBITED CROSS-EXAMINATION OF GOODARZI WITH THE RECORDS RELATIVE TO NICHILSON'S (SIC) PRIOR MISCARRIAGE."
 III {¶ 6} "THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 7} Appellant claims the trial court erred in permitting the state's expert witness, Bijan Goodarzi, M.D., to testify without first providing appellant a written report of his findings and conclusions. We disagree.
 {¶ 8} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 9} Crim.R. 16 governs discovery and inspection. Subsection (B)(1)(d) provides for the disclosure to the defense of any results or reports of examinations or scientific tests:
 {¶ 10} "(B) Disclosure of evidence by the prosecuting attorney
 {¶ 11} "(1) Information subject to disclosure.
 {¶ 12} "(d) Reports of examination and tests. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or *Page 4 
photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, made in connection with the particular case, or copies thereof, available to or within the possession, custody or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney."
 {¶ 13} We note the right to such results or reports includes written reports that may be copied and are available to or within the possession and control of the state.
 {¶ 14} Appellant argues because he specifically requested Crim.R. 16(B)(1)(d) discovery, the state should have given him a report. The evidence reveals there was no written report or opinion by Dr. Goodarzi, as he testified from the medical reports in his possession. T. at 438, 441. Appellant had the medical records Dr. Goodarzi relied upon during his testimony. T. at 442.
 {¶ 15} We concur with the trial court's ruling that there was no written report to provide to appellant and therefore there was no violation of Crim.R. 16(B)(1)(d).
 {¶ 16} Assignment of Error I is denied.
 II {¶ 17} Appellant claims the trial court erred in prohibiting the use of a July 2003 medical report of a miscarriage suffered by Ms. Nicholson in cross-examining Dr. Goodarzi. We agree, but find the error to be harmless.
 {¶ 18} Appellant argues the trial court violated Evid.R. 104, and in particular, subsection (E):
 {¶ 19} "(A) Questions of admissibility generally *Page 5 
 {¶ 20} "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (B). In making its determination it is not bound by the rules of evidence except those with respect to privileges.
 {¶ 21} "(B) Relevancy conditioned on fact
 {¶ 22} "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.
 {¶ 23} "(C) Hearing of jury
 {¶ 24} "Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall also be conducted out of the hearing of the jury when the interests of justice require.
 {¶ 25} "(D) Testimony by accused
 {¶ 26} "The accused does not, by testifying upon a preliminary matter, subject himself to cross-examination as to other issues in the case.
 {¶ 27} "(E) Weight and credibility
 {¶ 28} "This rule does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility."
 {¶ 29} The trial court prohibited appellant from using the July 2003 miscarriage to cross-exam Dr. Goodarzi because Dr. Goodarzi did not formulate his opinion on Ms. Nicholson's prior medical records, and the fact that Ms. Nicholson had suffered a previous miscarriage did not change Dr. Goodarzi's opinion: *Page 6 
 {¶ 30} "THE COURT: Thank you, Mr. Kaido. With regard to Dr. Goodarzi and his testimony, I believe it's clear following this — this inquiry that with regard to those, having those, it does not change his opinion. I am not going to allow those to be presented to Dr. Goodarzi. With regard to any follow-up questions, why that's not part of that report, it just — just depends on whether that comes up as part of what he did review. If he did review that, it's going to come out." T. at 460.
 {¶ 31} Defense counsel did not take the lead suggested by the trial court and form a hypothetical question on the issues of drug abuse, previous miscarriage and the presence of the herpes virus. All of these issues may have gotten in for impeachment purposes if appellant had in fact ever put the first miscarriage before the jury.[1]
 {¶ 32} Evid.R. 703 provides that the facts or data upon which an expert "bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." The first miscarriage, some six months prior to the miscarriage sub judice, could have affected Dr. Goodarzi's opinion. Although the trial court found it did not affect Dr. Goodarzi's opinion, it was error not to let the triers of fact determine if that was a credible deduction. However, we find the error to be harmless. Harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Overcoming harmless error requires a showing of undue prejudice or a violation of a substantial right. *Page 7 
 {¶ 33} Appellant could have achieved the same effect with a hypothetical question and direct evidence by his own expert, but chose not to because of the possibility of opening the door to prior bad acts, i.e., assaults.
 {¶ 34} We find the exclusion of Defendant's Exhibit C in the cross-examination of Dr. Goodarzi was error, but it was harmless error.
 {¶ 35} Assignment of Error II is denied.
 III {¶ 36} Appellant claims his convictions were against the manifest weight of the evidence. We disagree.
 {¶ 37} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 38} Appellant was convicted of involuntary manslaughter in violation of R.C. 2903.04(B) which states the following: *Page 8 
 {¶ 39} "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor."
 {¶ 40} Appellant was also convicted of assault in violation of R.C.2903.13(A) which states, "No person shall knowingly cause or attempt to cause physical harm to another."
 {¶ 41} Appellant argues Ms. Nicholson's testimony was not credible as to the nature of the assault, the timeline of events and the inconsistencies between the witnesses cast doubt on Ms. Nicholson's testimony, the testimony of Ms. Nicholson and her sister cannot be reconciled with other objective evidence, testimony on the amount of bleeding Ms. Nicholson suffered cannot be reconciled with the testimony of other witnesses, and there was a lack of physical evidence to substantiate Ms. Nicholson's testimony. Appellant argues the evidence is more consistent with his defense theory (Ms. Nicholson concocted the assault allegation to blame appellant for her miscarriage to get back into her family's good graces) than his guilt. See, Appellant's Brief at 27.
 {¶ 42} Ms. Nicholson testified she was living with appellant and discovered she was pregnant in October of 2003. T. at 127. She experienced spotting in December of 2003. T. at 129. On the day of the incident, January 1, 2004, Ms. Nicholson and appellant had an argument over sex. T. at 137. Appellant struck Ms. Nicholson in the face and pushed her to the floor; he grabbed her by the neck, lifted her off the floor, slapped her and dropped her to the floor; he then kicked her in the lower back five to ten times; Ms Nicholson stood up and felt a rush of blood. T. at 138-139, 140-141. Ms. Nicholson weighed approximately 100 pounds. T. at 139. *Page 9 
 {¶ 43} Thereafter, Ms. Nicholson called her sister to come pick her up. T. at 142, 143. Both Ms. Nicholson and her sister testified they stopped for gas before going to the sister's house. T. at 146, 193. Appellant followed them. T. at 147-148, 194. Ms. Nicholson took a bath before going to the hospital because she was covered in blood. T. at 149, 195. Ms. Nicholson went to the hospital and was examined by an emergency room doctor, Stacy Collins, M.D., and underwent an ultrasound. T. at 152. Photographs of Ms. Nicholson's lower back where she had been kicked were taken at the hospital. T. at 154-155; State's Exhibits 4-A, 4-B and 4-C. After being discharged, Ms. Nicholson spent the night at her mother's home and miscarried the following morning. T. at 157-160; State's Exhibit 6.
 {¶ 44} The emergency room nurse, Jean Neal, testified Ms. Nicholson claimed she was hit in the stomach and back. T. at 222. Dr. Collins examined Ms. Nicholson and observed vaginal bleeding and red spots on her back. T. at 231. After the ultrasound, Ms. Nicholson was discharge because the fetus was not viable and if she were to miscarry, she would miscarry naturally. T. at 235. No determination was made on the cause of the vaginal bleeding. T. at 236.
 {¶ 45} Ms. Nicholson's mother, Rebecca Robbins, observed bruising on her daughter at the hospital. T. at 298. She also re-affirmed the time of the miscarriage and the bloodstains where Ms. Nicholson had been sleeping. T. at 300-306; State's Exhibits 5-B, 5-C and 5-D.
 {¶ 46} The state's expert, Dr. Goodarzi, reviewed Ms. Nicholson's emergency room records, as well as the ultrasound/sonogram taken on January 1, 2004 (State's Exhibit 7). T. at 410-411. He testified spontaneous miscarriages occur in the first *Page 10 
trimester. T. at 419-420. Ms. Nicholson's fetus was fifteen weeks. T. at 417-418. If a fetus makes it to the second trimester, the chance that a miscarriage is caused by a "defect" is very small. T. at 420-421. Dr. Goodarzi opined because Ms. Nicholson had a posterior placenta (which was viewed in the sonogram), repeated trauma to the back would cause the placenta to pull away from the uterine wall. T. at 423-424. He also opined there was an abruption to the placenta and a kick to the lower back could cause the abruption. T. at 426-427. The report discounted herpes or drug abuse as factors because of the fetus being in the second trimester. T. at 427.
 {¶ 47} Jeffrey Lee, M.D., a forensic pathologist who examined the placenta and the fetus, opined there was an abruption of the placenta that was not self-induced, and being kicked five to ten times in the lower back would be consistent with the cause of the abruption. T. at 480-484. He estimated the fetus to be about twelve weeks. T. at 497. In his autopsy report, Dr. Lee listed the cause of the abruption as "Blunt force injury to placenta with large subacute hemorrhage." T. at 507.
 {¶ 48} Appellant's defense consisted of the testimony of his expert, Mark Landon, M.D. Dr. Landon concurred Ms. Nicholson had a posterior placenta, and opined a posterior placenta would be more protected than an anterior placenta because "you have the spine, muscles of the back, and the soft tissues overlying, so it's less likely to sustain a direct blow." T. at 529-530. He also concurred the fetus was in the second trimester, and there was no indication of damage in the January 1, 2004 ultrasound. T. at 532, 534. Dr. Landon opined the red marks on Ms. Nicholson's back could have been caused from "the skin rubbing against something" and not blunt force. T. at 536. It was Dr. Landon's opinion examining the placenta without all the medical records was *Page 11 
insufficient to make the finding of "blunt force injury" that Dr. Lee did. T. at 543-545. Dr. Landon concluded the medical records and pathology report did not substantiate the conclusion of "blunt force injury" to the placenta, and the cause of Ms. Nicholson's miscarriage was of non-specific origin. T. at 546.
 {¶ 49} The jury had two versions of the cause of the miscarriage, one nonspecific and the other caused by "blunt force injury" to the placenta. It is clear the jury chose to follow the opinions of Dr. Lee and Dr. Goodarzi because these opinions were consistent with the testimony of Ms. Nicholson.
 {¶ 50} Upon review, we find substantial credible evidence to support the jury's findings of guilty, and no manifest miscarriage of justice.
 {¶ 51} Assignment of Error III is denied.
 {¶ 52} The judgment of the Court of Common Pleas of Muskingum County, Ohio is hereby affirmed.
 By Farmer, P.J., Wise, J. and Edwards, J. concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio is affirmed.
[1] The trial court had previously ruled that the issue of the first miscarriage and Ms. Nicholson's claim that it occurred as a result of an assault by appellant would open the door to prior bad acts. T. at 442. *Page 1